Argued and submitted April 8, affirmed December 8, 2004

Carol HENDERSON,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

99-0421; A118731

102 P3d 699

David C. Force argued the cause and filed the briefs for petitioner.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

## LINDER, J.

The Public Employees Retirement Board (board) denied petitioner's request for disability retirement benefits on the ground that she had failed to establish a sufficient causal connection between her employment and her disability. *See* ORS 238.320(1). Petitioner seeks review, arguing principally that the board erred in requiring her to show that her work was the " 'majority cause' of any disease leading to her disability." Because we disagree that the board applied that standard in denying petitioner's disability claim, we affirm.

We take the facts, which petitioner does not challenge, from the board's order. Because the issue on appeal is a legal one—*i.e.*, whether the board applied the correct legal standard in evaluating petitioner's disability claim—our description of the facts briefly summarizes the board's much more extensive factual findings.

Petitioner has a long history, dating back to high school, of sensitivity to chemicals and odors, chronic fatigue, and gastrointestinal (GI) problems. Because of her allergic reactions to carpets, sawdust, foams, printing supplies, photocopiers, cleaning supplies, and tobacco smoke, she left a series of jobs in the 1970s and 1980s. In 1988, petitioner began working for Lane County and worked for the county until 1996. Approximately five times during her years of employment with Lane County, she was exposed at work to fumes, odors, or chemicals that caused her to have reactions such as sinus and nasal congestion, headache, sore throat, and achy joints. During that same general time period, petitioner was also exposed to non-work-related substances that gave rise to similar symptoms. In some instances, petitioner's reactive symptoms persisted for a day; in others, they persisted for weeks. She was medically examined and treated for those reactions and, on one occasion, her physician took her off work temporarily. In March 1996, one of her physicians diagnosed her as having severe somatic dysfunction, multiple chemical sensitivities (MCS), ongoing food allergies, and possible GI dysbiosis. He concluded that petitioner could return to work at Lane County if she used air filtration or a

face mask. Petitioner did not return to work at Lane County, however, because the county would not provide her with an air filtration system.

Throughout 1996 and 1997, after leaving her employment with Lane County, petitioner continued to see her physicians for complaints of chemical reactivity. In May 1997, Dr. Morton, a specialist in occupational medicine, diagnosed petitioner as having "active porphyrin metabolic dysfunction" (*i.e.*, porphyria). He explained that people "with porphyria traits are abnormally susceptible to porphyrogenic substances," such as the fumes from certain types of chemicals and substances. He further explained that, "[o]nce activated, porphyria symptoms do not always stop when the initiating exposure stops." In connection with a workers' compensation claim that petitioner filed with Lane County, petitioner was also examined by Dr. Burton, a specialist in medical toxicology and occupational medicine. In Burton's opinion, petitioner's history and symptoms were not consistent with a diagnosis of porphyria, and petitioner does not suffer from that condition. Burton also opined that the diagnosis of MCS given by one of petitioner's treating physicians was not a legitimate medical diagnosis. In Burton's view, physicians use a diagnosis of MCS to explain a variety of nonspecific symptoms otherwise not organically explainable.

Meanwhile, in late 1997 or early 1998, petitioner tried working part time in a home-based office environment. She could not continue the work, however, because the house was new, and she reacted to the carpeting and paint fumes. Petitioner continued to have chemical-reactivity problems in 1998. Some were caused by fragrances and fumes of various origins that she was exposed to in her own home.

In April 1999, petitioner filed an application for disability retirement with the Public Employees Retirement System (PERS), listing "porphyrin metabolic dysfunction" and "MCS" as the nature of her work-related disability. The application was administratively denied, and petitioner requested a contested case hearing. At that hearing, it was undisputed that petitioner is disabled from working. The issues were limited to whether she suffers from a medically recognized illness or disease and whether her disability due

to that illness or disease was caused by her work. On those issues, the administrative law judge (ALJ) concluded:

> "[Petitioner] has not demonstrated that her disability is the result of injury or disease sustained while in the actual performance of her duties as an employee of Lane County. [Petitioner] does not have porphyria. And, to the extent [petitioner] has a syndrome associated with MCS, she has not established that her disease was initially caused, aggravated, or accelerated by the performance of her duties and/ or that her on-the-job exposures were the efficient, dominate, and proximate cause of her disability."

After the ALJ issued her proposed order, petitioner filed objections and requested a further hearing before the board. The board, after the hearing, adopted the ALJ's proposed order (with minor modifications not pertinent here) and rejected petitioner's application for disability retirement benefits.

On review, petitioner argues that the board erroneously applied a "majority cause" of disease standard in assessing whether petitioner had carried her burden to establish that her disability was work related. According to petitioner, the board focused on whether the work conditions or exposures were the major cause of petitioner's *disease*, rather than on whether they aggravated her disease or caused her *disability*. Petitioner asserts that, under such a standard, no person with a preexisting disease can obtain disability benefits under ORS 238.320(1), even when work is responsible for aggravating the preexisting disease to the point that it becomes disabling. As we explain below, petitioner mischaracterizes the standard that the board actually applied, and her argument fails with that recognition.[1]

We begin by describing the pertinent statute and board rules. We then turn to the legal analysis articulated by the board. Finally, we examine how the board applied that analysis to the factual record before it. As that examination reveals, the board did not focus on whether petitioner's work

---

[1] Although petitioner raises two assignments of error, she asserts in both that the board applied the wrong standard in evaluating her claim. Because our answer to that contention resolves both assignments of error, we treat them as a single challenge to the board's order.

exposures were the cause of her *disease* (*i.e.*, her MCS). Rather, the board's inquiry was, as petitioner contends it should be, whether her work aggravated or accelerated her disease in such a way that it rendered the disease *disabling*.

Under ORS 238.320(1), a member of the PERS retirement system with fewer than 10 years of service is entitled to a "duty disability" retirement allowance if he or she is

"mentally or physically *incapacitated* for an extended duration * * * and thereby unable to perform any work for which qualified, *by injury or disease sustained while in actual performance of duty*[.]"

(Emphasis added.) Thus, under the terms of the statute, an applicant for disability benefits must be (1) incapacitated from performing any work and (2) the incapacity must be due to an injury or disease "sustained" while in actual performance of work.

PERB has adopted a rule that further explains what it means for an injury or disease to be "sustained while in the actual performance of duty" and how the statute applies when a preexisting disease is involved. That rule, OAR 459-015-0010(5), provides:

"Duty Disabilities. Applicants with less than ten years of PERS qualified employment must establish that they are members of PERS and were disabled on the job; the applicant's disability must arise out of and in the course of the applicant's employment [(ORS 238.320(1))]:

"(a) In performance of duty: Each duty disability retirement applicant shall establish that the claimed disability was 'sustained while in the actual performance of duty' [(ORS 238.320(1))]. That means that the injury or disease was initially caused, *aggravated or accelerated* by the performance of the member's duties in the employment of a participating public employer, not that the job is merely a contributing factor. The job must be the material contributing cause of the injury or disease. Performance of duty includes whatever an employee may be directed, required or reasonably expected to do in connection with his or her employment, and not solely the duties peculiar to his or her position;

"(b)   Pre-existing condition or disease: Although a pre-existing condition or disease may contribute to the result, the on-the-job injury or disease must be the efficient, dominate[2] and proximate cause of the duty disability."

(Emphasis added.) Under the explicit terms of paragraph (a), to satisfy the statutory "sustained while in actual performance of work" requirement, a disease need not be initially caused by work. Rather, the statutory standard is satisfied if a disease is aggravated or accelerated in the performance of work duties.[3] Under the explicit terms of paragraph (b), the fact that a preexisting disease contributes to the disability does not preclude an award of disability benefits. Rather, the worker is entitled to disability benefits if the evidence establishes that "the on-the-job injury or disease" is "the efficient, dominate and proximate cause" of the duty disability.[4]

Both before the ALJ and the board, petitioner acknowledged the requirements of paragraphs (5)(a) and (5)(b) of the board's rule. She quoted OAR 459-015-0010(5) in full, italicizing the portion of paragraph (b) that requires, in the case of a preexisting condition or disease, the on-the-job

---

[2] The rule uses the verb "dominate" when, given the context, it should use the adjective "dominant." As a result, the two words were often used interchangeably by the parties and the board. We have not corrected any misuses of the terms in our opinion when quoting the rule, the parties' arguments, or the ALJ and board orders.

[3] Paragraph (a), we note, is somewhat ambiguous. On the one hand, the rule states that an injury or disease is sustained in the performance of duty if work duties *aggravate or accelerate* it, as well as initially cause it. On the other hand, the rule states only that the job must be the material contributing cause of "the injury or disease"; it does not expressly require, in the case of an aggravated condition, work to be the material contributing cause of the *aggravation*. In context, however, that is the most—and perhaps only—plausible interpretation of the rule because it otherwise would not provide a standard of causation for an aggravated condition.

[4] Paragraph (b) is also somewhat ambiguous. It requires, in the case of a preexisting disease, that the "on-the-job disease" be the "efficient, dominate and proximate cause of the duty disability." Because the rule is directed to preexisting conditions and diseases, the reference to "on-the-job disease" appears to contemplate an on-the-job *aggravation* of the preexisting condition that causes the disability, even though the rule does not say so in so many words. Again, given the context, that is the most plausible interpretation of the rule and, as our discussion of the board's order later demonstrates, the board expressly so interpreted the rule's requirements in this case. *See Don't Waste Oregon Com. v. Energy Facility Siting Council*, 320 Or 132, 142, 881 P2d 119 (1994) (agency interpretation of its own rules is entitled to deference).

injury or disease to be the "efficient, dominate and proximate cause of the duty disability." Petitioner then argued:

> "A 'disease' * * * is a condition of a person's health, which can develop over hours, weeks or even years; and is suffered as long as it exists, whether one is working or not working. As OAR 459-015-0010(5)(a) acknowledges, the statute speaks to a disability (*i.e.*, 'incapacity') sustained while in the actual performance of duty. As it relates to a pre-existing disease, * * * this language means that the disease itself may entirely pre-exist the employment conditions; but that some event or condition in the PERS-covered employment must be the 'material, contributing cause' of disability resulting from the disease. And to make sense and be consistent with the statute, [paragraph] (5)(b) must mean that an on-the-job event or condition must be the 'efficient, dominant and proximate cause' of an aggravation of the pre-existing disease into the 'disability.' "

Petitioner concluded her argument to the board by acknowledging that "[w]hat is important is whether employment conditions at Lane County were the 'efficient, dominant and proximate cause' of her disability." She also agreed that, "to prevail in this claim she must prove by a preponderance of the evidence that her employment conditions at Lane County aggravated and accelerated that condition/disease to the extent that those employment conditions were the efficient, dominant and proximate cause of her present disability." Her essential point to the board was that she had satisfied that standard.

At the outset of its order, the board described petitioner's burden of proof as follows:

> "[B]ecause she has less than ten years of PERS qualified employment, [petitioner] must * * * demonstrate that her injury or disease 'was initially caused, aggravated or accelerated by the performance' of her duties. [OAR 459-015-0010(5)(a); ORS 238.230(1).] The job must be the material contributing cause of the injury or disease, not merely a contributing factor. *Id.* Furthermore, insofar as [petitioner's] condition stems from a pre-existing condition or disease, she must also prove that her on-the-job exposures were the 'efficient, dominate [*sic*] and proximate cause' of the duty disability. OAR 459-015-0010(5)(b)."

(Footnote omitted; bracketed italicized text in original.) The board then examined whether petitioner suffers from a medically recognized illness or condition. After concluding that petitioner does not suffer from porphyria, but that she does have symptoms consistent with MCS, the board turned to whether petitioner had "established the requisite causal connection between her on-the-job exposures and her claimed disability" from MCS. In making that determination, the board further examined its rule, OAR 459-015-0010(5). The board observed that, under paragraph (a), work must be the "material contributing cause" of the disabling disease and not merely a contributing factor. Construing that language, the board concluded that,

> "in the disease context, the * * * 'material contributing cause' standard is satisfied by showing that the member's employment duties were the primary cause of the disease, *i.e.*, more of a cause than other, non-employment related causes."

The board also looked to paragraph (b) of the rule and concluded that essentially the same standard applies when the disability involves a preexisting condition or disease:

> "This [*i.e.*, that the on-the-job duties must be the primary cause of the disabling disease] is especially true in the context of a pre-existing condition or disease, where the member must show that the on-the-job exposures were the 'efficient, dominate and proximate' cause of the *duty disability*. OAR 459-015-0010(5)(b). Black's Law Dictionary (7th ed. 1999) defines 'proximate cause' as '[a] cause that is legally sufficient to result in liability' and '[a] cause that directly produces an event and without which the event would not have occurred.' Black's Law Dictionary also considers the terms 'efficient cause,' 'direct cause,' and 'primary cause' as the legal equivalent of 'proximate cause.' The term 'dominate cause,' is not defined in Black's but the law dictionary defines the word 'dominate' as the equivalent of 'predominate.' And, 'dominate' and 'predominate' are defined by Webster's Collegiate Dictionary as 'having superior strength, influence or authority.' (*See* Merriam-Webster's Collegiate Dictionary, on-line at www.m-w.com

(2001).) Read together, these three words also require that the on-the-job disease be the direct and primary cause of [petitioner's] *disability*."

(Emphasis added.)

As noted at the outset of our opinion, petitioner's essential quarrel with the board's order is that the board required her to prove that her work exposures were the "majority cause" of her disease rather than of her disability. We disagree that the board imposed that burden on her. To be sure, the board quoted from and cited paragraph (a) of its rule, which focuses textually on whether "the injury or *disease* was initially caused, aggravated or accelerated by the performance of the member's duties." But the board also considered subsection (b), which pertains specifically to preexisting conditions or diseases. The board specifically concluded that, when a preexisting disease or condition is involved, an applicant for disability benefits must "show that the on-the-job exposures were the 'efficient, dominate and proximate' cause of the *duty disability*." (Emphasis added.)

That is also the analysis that the board in fact applied to the factual evidence. The board began by noting that petitioner was relying on a "few discrete [work] exposures" over the course of her several years of employment with Lane County as a basis for claiming that work had "caused her to become disabled." The board then previewed its conclusion, saying that the board "simply [is] not persuaded that these exposures are the direct and primary cause of *her disability*." (Emphasis added.) Thus, at the outset, the board's focus was on whether the work exposures had resulted in the disability, not in the disease itself.

That remained the board's focus as it examined the evidence. First, the board considered the several work exposures that petitioner relied on (*i.e.*, to carpet fumes, odors from repainting, diesel odors, and odors from a new bookcase). The board concluded that it could not find that the exposures "were [the] direct and primary cause of her disability"; that they caused any "pathological change in [petitioner's] MCS syndrome"; or that they were "the dominant force in her claimed incapacity."

Next, the board considered the medical opinions that petitioner submitted. The board acknowledged that some of the medical experts had opined that petitioner's inability to work was due to her exposures to substances in the workplace. The board found those opinions unpersuasive, however, and explained why. Implicit in that discussion was the board's acknowledgment that, if the medical opinions had demonstrated persuasively that work had been the primary factor in causing petitioner's disability (*i.e.*, not her disease), petitioner would have satisfied her burden of proof. In the board's view, however, the problem was that petitioner's medical evidence on the point was not persuasive. As the board put it:

> "Notwithstanding the opinions of [petitioner's medical experts] that [petitioner's] work duties caused an exacerbation of her condition, [the board concludes that petitioner's] *disability* stems directly and primarily from her pre-existing hypersensitivity to chemicals rather than any particular work exposure or series of exposures at Lane County."

(Emphasis added.)

Finally, the board observed that "the fact that [petitioner's] on-the-job exposures triggered symptoms does not mean that the exposures were the primary cause of her MCS condition *or its worsening*." (Emphasis added.) The board considered the fact that, throughout the years that petitioner worked for Lane County, her sensitivity reactions did not render her unable to work. Although her physician temporarily took her off work in 1996, that same physician later released her to return to her regular work at Lane County, even though she never did. Relying on the fact that petitioner was released to return to her regular work at the point when she stopped working for Lane County, the board concluded that petitioner's "on-the-job exposures at Lane County were not the primary cause of her *disability*. In other words, these particular exposures did not result in [petitioner's] *inability to work*." (Emphasis added.) The board concluded with this summary:

> "In summary, while it is evident that [petitioner] experienced symptoms following her on-the-job exposure[s] * * *

she also experiences similar symptoms upon exposure[s] * * * in the world at large. [Petitioner] has not established by a preponderance of the evidence that her *on-the-job exposures aggravated or accelerated her condition to the extent that her work duties became the efficient, dominate, and proximate cause of her disability.*"

(Emphasis added.)

In short, the analysis that the board ultimately articulated was exactly the analysis that petitioner urged that it should: whether the on-the-job exposures aggravated or accelerated petitioner's condition in such a way that they were the primary cause of her disability.[5] Petitioner's challenge to the board's order thus fails because it depends on a faulty premise—namely, that the board required her to prove that her work exposures were the primary cause of her preexisting disease.[6] The board did not do that. Instead, the board tested the evidence to determine whether petitioner persuasively demonstrated that the irritating exposures during her Lane County employment aggravated her condition in such a way that work, rather than other causes, was the

---

[5] Part of the problem in this case may be due to the tendency of both petitioner and the board sometimes to paraphrase the rule's requirements rather than adhere strictly to the rule's express language. Given some of the imprecision in the rule (*see* 196 Or App at 515, nn 2, 3), the temptation to paraphrase may be understandable. But we caution that, in drafting contested case orders as well as legal arguments in briefs, paraphrasing legal requirements, even if done to avoid repetition, is rarely a virtue. The practice tends to inject imprecision into the analysis that, in turn, can lead to uncertainty on the part of the parties and courts reviewing the order as to whether the requisite legal standards have been accurately articulated and applied. As we explain, in this particular case, we are satisfied that the board's order, read fairly and as a whole, both articulated and applied the legal standard of causation that petitioner urged it to apply, rather than the one that petitioner now accuses the board of having adopted. Thus, although some imprecision and variation lurk in the board's articulation of the standard of causation, we do not agree with petitioner that the board required petitioner to show that her work with Lane County was the major cause of *her initial disease.*

[6] At one point in her argument, petitioner also objects that the board applied the wrong standard by requiring her to show that her Lane County work exposures were not only the primary cause of her disability but also that they outweighed "all other factors combined." We disagree. As our discussion of the board's order demonstrates, the board was not persuaded that petitioner's work exposures at Lane County were the direct and primary cause (and hence, the material contributing cause) of her condition. Thus, the board did not decide—nor did it have to— whether the work exposures in a case involving aggravation of a preexisting disease must be the "single most material cause," as petitioner asserts, or must instead "outweigh all other factors combined."

primary—*i.e.*, efficient, dominate and proximate—cause of her disability. Petitioner does not challenge the board's factual findings in that regard or otherwise argue that the board's order is not supported by substantial evidence. Thus, petitioner's challenge fails with the premise that underlies it.

Affirmed.